<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| IKHAN KIM, | : |
|                     Plaintiff, | :   **Civil Action No. 22-07281-JXN-AME** |
| v. | :   **OPINION and ORDER** |
| ECO PRO LLC, et al., | : |
|                     Defendants. | : |

<u>**ESPINOSA, U.S.M.J.**</u>

This matter is before the Court on the parties' August 22, 2023, and October 26, 2023 letters presenting discovery disputes [D.E. 24, 25], which the Court has considered and, in its discretion, decides without oral argument. *See* Fed. R. Civ. P. 78. For the following reasons and as set forth in more detail below, the parties' applications are denied in part and granted in part.

**I.      RELEVANT BACKGROUND**

Plaintiff worked as a laundry attendant for Defendants from approximately October 2012 to November 2022, and filed this action alleging their failure to pay him minimum wage and overtime compensation in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, the New Jersey Wage and Hour Law ("NJWHL"), N.J.S.A. 34:11-56a *et seq.*, and the New Jersey Wage Payment Law ("NJWPL"), N.J.S.A. 34:11-4.1 *et seq.* [*See generally* D.E. 1, Compl.]. Plaintiff alleges "Defendants failed to keep full and accurate records of Plaintiff's hours and wages … to mitigate liability for their wage violations." [D.E. 1, Compl. ¶¶ 22-23].[1]

---

[1] Defendant John S. Lee is the alleged owner of Defendant Eco Pro LLC. [D.E. 1, Compl. ¶ 11].

    A.    <u>The August 22 Joint Discovery Dispute Letter</u>[2]

In the August 22 letter, the parties raise disputes concerning Request Nos. 14 and 15 of Defendants' first set of document requests, which respectively seek "documents concerning bank accounts maintained by Plaintiff from 2012 to the present" and Plaintiff's tax returns for the years 2012 through 2022. [D.E. 24 at 1]. Plaintiff produced copies of images of checks he received from Defendants, but he also objected to both requests as seeking irrelevant documents, not reasonably calculated to lead to the discovery of admissible evidence, overly broad, and unduly burdensome. [*Id.* at 2].[3]

Defendants claim the requests pertain, in part, to Plaintiff's alleged non-working periods during which he applied for and received unemployment benefits. [*Id.* at 3]. They further argue the requested documents are relevant because they would show: (i) the total Defendants paid Plaintiff; (ii) his part-time and non-working periods; (iii) his work with other employers during the relevant period; and (iv) his receipt of unemployment benefits. [D.E. 24 at 3]. Defendants contend this information is not available from other less invasive, reliable sources, any sensitive

---

[2] So far, the parties have been unable or unwilling to resolve, on their own, even simple disputes in this matter. Indeed, at the outset of discovery, the parties failed to reach agreement on a joint discovery plan—a basic schedule of discovery deadlines. [*See* D.E. 12]. Later, the parties raised a dispute over Plaintiffs' request for a one-day extension, *nunc pro tunc*, of the deadline to serve his discovery demands. In that dispute, the parties disregarded the requirements of this Court's Civil Case Management Order and engaged in conduct that fell below the standard expected from attorneys practicing in this District. [*See* D.E. 18 (admonishing counsel and directing them to Appendix R to the Local Civil Rules, entitled "Guidelines for Litigation Conduct")]. The Court will respond appropriately to continued behavior by counsel that falls below the standard of professionalism expected in this District. *See, e.g., Ladino v. Cordova*, No. 21-2449, 2023 WL 2915402, at *6-9 (E.D.N.Y. Apr. 12, 2023) (warning counsel over frequent and "frivolous" discovery motions and reminding counsel "to operate with the utmost courtesy and professionalism toward one another and the Court," or face sanctions for "further unprofessional or time-wasting behavior").

[3] The August 22 letter also notes the existence of certain deficiencies the parties were meeting and conferring about. [D.E. 24 at 2]. Defendants contended that Plaintiff failed to serve a signed certification to his responses to Defendants' discovery demands and that an updated damages calculation was required because certain discovery responses contradicted the calculation served by Plaintiff. [*Id.*].

information may be produced pursuant to the applicable confidentiality order, and tax records "go to … Plaintiff's truthfulness." [*Id.* at 3-5].

Plaintiff opposes the application on various grounds, including that Defendants have not shown compelling reasons requiring the production of his bank and tax records, which he purportedly shares and files with his spouse. [*Id.* at 5-7]. First, Plaintiff states there is no dispute over the amount Defendants paid him.[4] [*Id.* at 5]. Second, he argues the requests are overbroad because the responsive documents reflect financial details concerning his spouse, who is not a party to this action, unreasonably invading her privacy. [*Id.*]. Third, Plaintiff contends he should not be burdened with these requests due to Defendants' own failure to maintain wage and hour records of their employees. [*Id.* at 5-6]. Fourth, Plaintiff states the requested records would not even reflect Plaintiff's work with other employers or his part-time, non-working, or unemployment periods. [*Id.* at 6-7]. Finally, he argues Defendants may obtain his unemployment benefits information from the relevant New Jersey agency and that Defendants' own employees could testify about Plaintiff's work periods with Defendant Eco Pro LLC. [*Id.* at 7].

In reply, Defendants argue these records are necessary to establish their defense that Plaintiff was an exempt supervisor and/or independent contractor. [*Id.* at 4]. In response, Plaintiff contends Defendants have not previously asserted this defense and that, in any event, the requested records would not provide any information supporting such a defense. [*Id.* at 6].

      B.    <u>Defendants' October 26 Unilateral Discovery Dispute Letter</u>

In their October 26 letter, Defendants seek an order compelling Plaintiff to respond to their second set of discovery demands and produce signed certification pages. [D.E. 25].

---

[4] Plaintiff states he produced cleared check images and that bank statements would not reflect his total wages because he did not deposit cash payments. [D.E. 24 at 5]. Defendants argue the records would show whether Plaintiff actually deposited cash payments, and assert they paid Plaintiff in "numerous forms … including … car payments, travel payments, bonuses, checks, and cash." [*Id.* at 4].

Defendants served a deficiency letter [D.E. 25-4], to which Plaintiff responded within a week [D.E. 25-5]. Unsatisfied with that response, Defendants served another deficiency letter, largely reiterating their position. [D.E. 25-6]. Defendants assert Plaintiff neither responded to that letter nor emails proposing dates to meet and confer further. [D.E. 25 at 3; D.E. 25-7].

In response to the second set of requests, Plaintiff asserted he did not possess documents concerning his work "with any employer other than Defendants during his employment with Defendants," and, subject to certain objections, identified his federal tax returns for the years 2020 and 2021 as containing information concerning his "collection of any unemployment benefits during his employment with Defendants." [D.E. 25-2 at 3-4]. Plaintiff further objected to the second set of interrogatories on the ground that Defendants exceeded the maximum number of permissible interrogatories. [*Id.* at 6-9]. Finally, Plaintiff answered the second set of requests for admissions in full, which his counsel certified. [*Id.* at 3, 9, 13-14].

In reply, Defendants identify four deficiencies. [*See generally* D.E. 25]. First, they state Plaintiff failed to certify each response to both sets of demands. Plaintiff contends he is required to certify only his interrogatory answers. Second, Defendants complain that Plaintiff failed to respond to their second set of interrogatories, which Plaintiff says he is not required to answer. Third, Defendants take issue with Plaintiff's responses to certain document requests, asserting his objections lack specificity and the documents Plaintiff provided are insufficient. Plaintiff contends he produced the only responsive records he possessed, and that Defendant can obtain additional records from the New Jersey Department of Labor. Defendants dispute the credibility of Plaintiff's response, and argue Plaintiff must obtain documents from relevant agencies. Finally, Defendants contend Plaintiff's updated damages calculation conflicts with other information, which Plaintiff explains is accounted for by certain features of his work schedule.

4

## II. DISCUSSION

### A. Scope of Discovery

Rule 26 sets forth the scope of discovery in civil actions, in relevant part, as follows:

> … Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit….

Fed. R. Civ. P. 26(b)(1). "It is well recognized that the federal rules allow broad and liberal discovery." *Pacini v. Macy's*, 193 F.3d 766, 777 (3d Cir. 1999) (citations omitted). While the precise boundaries of the Rule 26 relevance standard "depend upon the context of each particular action[,]" courts have construed it liberally, creating a broad range for discovery which would "encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issues that is or may be in the case." *Stepanski v. Sun Microsystems, Inc.*, No. 10-2700, 2011 WL 8990579, at *18 (D.N.J. Dec. 9, 2011) (citations and internal quotation marks omitted), *report and recommendation adopted*, 2012 WL 3945911 (D.N.J. Sept. 10, 2012).

However, the scope of discovery is not unlimited. *Robbins v. Camden City Bd. of Educ.*, 105 F.R.D. 49, 55 (D.N.J. 1985). Once the party seeking discovery demonstrates the relevance of the requested information, the opposing party must "show why discovery should not be permitted." *Cordero v. Warren*, No. 12-2136, 2016 WL 8199305, at *2 (D.N.J. Oct. 4, 2016), *aff'd*, 2017 WL 2367049 (D.N.J. May 31, 2017). This Court maintains broad discretion to resolve discovery issues. *Wisniewski v. Johns-Manville Corp.*, 812 F.2d 81, 90 (3d Cir. 1987). On motion or on its own, the Court must limit the frequency or extent of discovery otherwise allowed if it determines that: "(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less

expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the [general] scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C); *see also Goodman v. Burlington Coat Factory Warehouse Corp.*, 292 F.R.D. 230, 232 (D.N.J. 2013) (observing that Rule 26's proportionality standard permits the Court to guard against discovery into otherwise proper subjects of inquiry).

Otherwise, the party resisting discovery may seek a protective order, and the Court may, for good cause, issue an order protecting "a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). Good cause exists "'when a party shows that disclosure will result in a clearly defined, specific and serious injury but [] broad allegations of harm are not sufficient.'" *Schick v. Cintas Corp.*, No. 17-7441, 2020 WL 1873004, at *2 (D.N.J. Apr. 15, 2020) (quoting *Shingara v. Skiles*, 420 F.3d 301, 306 (3d Cir. 2005)); *see also E.E.O.C. v. Princeton Healthcare Sys.*, No. 10-4126, 2012 WL 1623870, at *18 (D.N.J. May 9, 2012) ("[T]he Court has a responsibility to protect privacy and confidentiality interests and has authority to fashion a set of limitations that allow as much relevant material to be discovered as possible ... while preventing unnecessary intrusions into legitimate interests that may be harmed by the discovery of material sought." (citations and quotation marks omitted)).

    B.    <u>Discoverability of Plaintiff's Tax and Bank Records</u>

The Court first assesses the relevance, proportionality, and burden of Defendants' request for eleven years of tax and bank records in light of the asserted FLSA, NJWHL, and NJWPL claims. These statutes "share the similar purpose of protecting employees 'from unfair wages and excessive hours,'" and, thus, should be resolved "by the same standard." *Brunozzi v. Crossmark, Inc.*, No. 13-4585, 2016 WL 112455, at *5 (D.N.J. Jan. 11, 2016) (quoting *Hargrove v. Sleepy's LLC*, 106 A.3d 449, 458, 463 (N.J. 2015)). They establish a non-modifiable minimum wage and

overtime guarantees and rates. *Id.* at *3, 5 (citations omitted). For example, the FLSA guarantees overtime compensation for work in excess of forty hours per week at one and a half times the employee's regular rate, and imposes liability on employers who violate its provisions in the amount of unpaid overtime wages and liquidated damages. *See id.* at *3.

The plaintiff-employee bears the burden of proving he performed work for which he was not properly compensated. *Aktas v. Mint Enter. LLC*, No. 20-7409, 2022 WL 11705208, at *5 (D.N.J. Oct. 20, 2022) (citing *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946) [hereinafter "*Mt. Clemens*"], *superseded by statute on other grounds*, 29 U.S.C. § 254(a)). However, considering the remedial nature of the FLSA, "this burden should not be insurmountable, [and] 'due regard must be given to the fact it is the employer' that has a recordkeeping obligation." *Id.* (quoting *Mt. Clemens*, 328 U.S. at 687). Indeed, employers are "in position to know and to produce the most probative facts concerning the nature and amount of work performed," and employees "seldom keep such records themselves," and even if they do, employees' records "may be and frequently are untrustworthy." *Mt. Clemens*, 328 U.S. at 687.[5]

Accordingly, an employee's burden should be discharged (i) "easily" based on an employer's records or, where the employer has failed to keep adequate records as required by law, (ii) by producing "sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." *Id*. If the employee satisfies the burden of proof, it then shifts to the employer, who must present "evidence of the precise amount of work performed" or negate "the reasonableness of the inference to be drawn from the employee's evidence." *Id.* at 687-88 (stating that a court may "approximate" damages in the event "the employer fails to

---

[5] Federal and state law impose detailed recordkeeping obligations on employers. *See* 29 U.S.C. § 211(c); 29 C.F.R. § 516.2(a); N.J.S.A. § 34:11-56a20; N.J.A.C. § 12:56-4.1. Employee records "must contain the employee's name, the workweeks for which salary or wages are paid, hours worked each workday, and the total hours worked each workweek." *Aktas*, 2022 WL 11705208, at *5 (citation omitted).

7

produce such evidence"); *see also U.S. Dep't of Lab. v. Five Star Automatic Fire Prot., L.L.C.*, 987 F.3d 436, 439-40 (5th Cir. 2021) ("Seventy-five years ago in [*Mt. Clemens*], the Supreme Court fashioned a … lenient standard rooted in the view that an employer shouldn't benefit from its failure to keep required payroll records, thereby making the best evidence of damages unavailable."); *Robinson v. Horizon Blue Cross-Blue Shield of N.J.*, No. 12-2981, 2013 WL 6858956, at *5 (D.N.J. Dec. 23, 2013) (noting the employee's "burden is relaxed when an employer keeps inaccurate or inadequate records"), *aff'd*, 2014 WL 3573339 (D.N.J. July 21, 2014), and *aff'd*, 674 F. App'x 174 (3d Cir. 2017); *Hargrove*, 974 F.3d at 470 (observing employees "should not bear the cost of the employer's faulty record keeping").

Additionally, with respect tax records, "Congress has guaranteed that federal income tax returns will be treated as confidential communications between a taxpayer and the government," thereby disfavoring their disclosure to third parties as a matter of public policy. *DeMasi v. Weiss*, 669 F.2d 114, 119 (3d Cir. 1982). Consequently, when deciding a motion to compel income tax returns in discovery, the Court is required to consider two important competing interests: the "tax payer's expectation of privacy and the liberal discovery policy embodied in and contemplated by [Rule] 26." *Robinson*, 2013 WL 6858956 at *3 (citing *DeMasi*, 669 F.2d at 119). To that end, courts in this District have applied a two-part test in which the party seeking the production of tax returns must show: (i) the relevance of the information; and, if relevant, (ii) "a compelling need for the tax returns due to the sought after information being otherwise unavailable." *Id.* (citations omitted). If the requesting party satisfies its initial, heavy burden, the objecting party then "bears the burden of proving that the information is otherwise available." *Id.* (stating tax returns "may still be protected … if the relevant information is available via other less invasive reliable sources") (citations omitted).

8

Here, the Court concludes that an order compelling Plaintiff to produce the requested tax and bank records is unwarranted. By their own admission, Defendants seek wage and hour information that they were required by law to maintain but did not—*i.e.*, the total pay Plaintiff received from Defendants and Plaintiff's part-time and non-working periods with Defendants. Thus, even assuming the relevance of those records, Defendants have not satisfied their burden of showing a compelling need for the tax returns or an entitlement to the bank records. *See Robinson*, 2013 WL 6858956 at *3; Fed. R. Civ. P. 26(b)(2)(C)(1). Defendants' claim that there are no less invasive, reliable sources of information pertaining to Plaintiff's damages stems from their own failure to comply with federal and state law. Given the sensitive and private nature of the records sought, which the Court must consider in balancing one party's claimed need for the information against the other party's privacy interest, the Court concludes it would be unduly oppressive and burdensome to require Plaintiff to produce records reflecting information that Defendants should have kept in the ordinary course of business—especially when those records might not, as Plaintiff argues, reflect the sought after wage and hour information.[6] Holding otherwise would also undermine the relatively light burden the Supreme Court has set for Plaintiff to bear in an action for unpaid wages under the FLSA, where his employer has failed to keep adequate records. *See Mt. Clemens*, 328 U.S. at 687.[7]

---

[6] It is unclear whether Plaintiff's tax and bank records, which are jointly filed and held with his spouse, would even reflect relevant information concerning his wages (at least with any meaningful necessary precision) or employment with anyone other than Defendants.

[7] Defendants appear to argue the tax records are necessary to assess Plaintiff's credibility. [*See* D.E. 24 at 5 ("[T]ax records are also important as Plaintiff signed [them] asserting that they are accurate and truthful. So … the tax returns go to … Plaintiff's truthfulness…."). The Court declines to order production of tax returns for the purpose of challenging Plaintiff's credibility, and to thereby endorse a fishing expedition justified only by Defendants' failure to abide by the law. *See Xiao Hong Zheng v. Perfect Team Corp.*, 739 F. App'x 658, 660 (2d Cir. 2018) (affirming order denying a motion "to compel production of tax information to attack a party's credibility").

Moreover, a request for eleven years of records to show Plaintiff's non-working and unemployment periods and receipt of unemployment benefits is overbroad given the uncontested assertion that Plaintiff took non-working periods while employed with Defendants only after the start of the COVID-19 pandemic in 2020. [*See* D.E. 24 at 3 (Defendants stating that, on or about May 29, 2020, Plaintiff "signed a notification that he was not willing to work for some time"); D.E. 25-2 at 13 (Plaintiff admitting "that he applied for and received unemployment benefits during the period when the business closed due to Covid-19 and when he could not work full time")]. Plaintiff also asserts he has already produced the only documents he possesses related to his receipt of unemployment benefits during his employment with Defendants. [*See* D.E. 25-3 & 25-5 at 1]. Leaving aside whether these records would even reflect if Plaintiff was employed by another employer during the relevant period, there is no basis to compel disclosure for this purpose given that Plaintiff has already represented that he has no "documents related to [his] employment with any employer other than Defendants…." [*See* D.E. 25-2 at 2].

Defendants cite *Kim v. Dongbu Tour & Travel Inc.*, No. 12-1136, 2016 WL 8677331 (D.N.J. Aug. 26, 2016), in support of their argument that—despite the public policy against disclosure of tax returns and their own inadequate recordkeeping—Plaintiff's tax and bank records are relevant, and the requests for such records are compelling and proportional. [D.E. 24 at 4]. *Kim* is distinguishable. There, in addition to asserting claims for unpaid wages, the complaint alleged the plaintiffs were misclassified as independent contractors and further asserted a retaliation claim under the FLSA. *See* 2016 WL 8677331, at *1. The defendants argued the returns they sought contained relevant information because the plaintiffs' income was evidence of (i) their "damages (or lack thereof) and their mitigation of such alleged damages," and "whether [they] were employees or independent contractors." *Id.* (citations and quotation

marks omitted). Ordering the returns disclosed, the Court concluded they were relevant to offsets or mitigation of the plaintiff's alleged damages, and that they could bolster the defendants' attempt to reraise the independent contractor-employee issue, which the District Court had decided in the context of a preliminary injunction motion. *Id.* at *2. Here, there is neither an FLSA retaliation claim nor a misclassification issue.[8] Rather, in this matter, Plaintiff asserts unpaid wage claims given his uncontested status as Defendants' former employee, implicating the rigorous recordkeeping obligations imposed by federal and state law. For the foregoing reasons, Defendants' request for Plaintiff's tax and bank records is denied.

        C.        <u>Discoverability of Plaintiff's Unemployment Benefit Information</u>

Defendants separately seek an order compelling Plaintiff to produce documents concerning his collection of unemployment benefits during his employment with Defendants, arguing that Plaintiff's objection to the request was improper and that his assertion that he is only in possession of the federal tax return schedule reporting his unemployment compensation for the years 2020 and 2021 is not credible. [*See generally* D.E. 25]. As an initial matter, Plaintiff's objection is stated with specificity, as required by Rule 34(b)(2)(B). It asserts the request is overly broad and unduly burdensome "in that it contains no temporal scope." [D.E. 25-2 at 2]. However, Defendants are correct that the objection is unfounded given that the second set of requests itself defines the "relevant time period" as October 2012 to the present. [D.E. 25-1 at 6].

---

[8] Without pointing to any pleading, Defendants contend, in the August 22 joint letter, that they "are also seeking to assert as part of their defenses that Plaintiff was an exempt supervisor, and independent contractor." [D.E. 24 at 4]. In response, Plaintiff argues Defendants raise this "defense" for the first time in this dispute and contend that the requested records could not possibly support such a defense. Despite asserting twenty-six affirmative defenses in their answer to the complaint, many of which strain the outer boundary of relevance, Defendants did not assert that Plaintiff's claims fail because he was not an employee. [*See generally* D.E. 9]. The assertion that Defendants "are not 'employers' under the FLSA or NJWHL" cannot be reasonably construed as encompassing the misclassification issue. [*See id.*].

11

Nevertheless, subject to that objection, Plaintiff responded to the request, in full, by identifying and producing the only responsive documents in his possession. [D.E. 25-2 at 2; D.E. 25-3]. There is no reason to question Plaintiff's assertion. First, in response to a request for admission, Plaintiff stated "that he applied for and received unemployment benefits during the period when the business closed due to Covid-19 and when he could not work full time." [D.E. 25-2 at 3]. Second, but more important, Plaintiff's response to Defendants' document request is signed by Plaintiff's counsel, and "[b]y signing, [the] attorney … certifie[d] that to the best of [his] knowledge, information, and belief formed after a reasonable inquiry" the response "is complete and correct as of the time it is made." Fed. R. Civ. P. 26(g)(1)(A). The presumption of accuracy and completeness is further bolstered by the parties' continuous obligation to supplement discovery responses. *See* Fed. R. Civ. P. 26(e)(1) ("A party who has made a disclosure under Rule 26(a)—or who has responded to an interrogatory, request for production, or request for admission—must supplement or correct its disclosure or response … [] in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing; or … [] as ordered by the court.").[9]

Having credited Plaintiff's assertions, the Court lacks authority to compel Plaintiff to produce what he does not possess. *See* Fed. R. Civ. P. 34(a)(1) ("A party may serve on any other party a request … to produce … [documents] in the responding party's possession, custody, or

---

[9] The Court reminds the parties that, given their obligations to serve the required initial disclosures and supplement discovery responses, they would likely be barred from using at trial or otherwise any documents that were not accordingly produced. *See Aktas*, 2022 WL 11705208, at *6 (citing Fed. R. Civ P. 37(c)(1) ("If a party fails to provide information ... as required by Rule 26(a) or (e), the party is not allowed to use that information ... unless the failure was substantially justified or is harmless.")).

control…."). Accordingly, Defendants' application to compel Plaintiff to produce additional documents concerning his receipt of unemployment benefits must be denied.[10] However, given Plaintiff's apparent concession that those documents are relevant and agreement that Defendants may request and obtain them from the relevant governmental agency, Defendants may serve any appropriate subpoena in accordance with Rule 45 and this Opinion and Order.

        D.        <u>Plaintiff's Objection to Defendants' Second Set of Interrogatories</u>

Defendants further seek an order compelling Plaintiff to respond to their second set of interrogatories, which Plaintiff refused to respond to on the ground that Defendants exceeded the maximum number of permissible interrogatories. [D.E. 25-2 at 6-9]. The Court sustains Plaintiff's objection. First, the Court's Pretrial Scheduling Order of March 29, 2023 permits parties to "serve interrogatories limited to 25 single questions including subparts." [D.E. 14]. Second, Rule 33(a)(1) states that "[u]nless otherwise stipulated or ordered by the court, a party may serve on any other party no more than 25 written interrogatories, including all discrete subparts," and that "[l]eave to serve additional interrogatories may be granted to the extent consistent with Rule 26(b)(1) and (2)." Defendants failed to timely seek leave to serve additional interrogatories as required by Rule 33(a)(1). The Court construes this dispute as Defendants' request for such leave and denies that application at this late stage in paper discovery.

        E.        <u>Certification of Discovery Responses</u>

Defendants also seek an order compelling Plaintiff to certify every discovery response served to date. Plaintiff correctly notes he is only personally required to provide a certification for the interrogatories he answered. Defendants' request on this score is denied.

---

[10] While Defendants allegedly employed Plaintiff until November 2022, Plaintiff only produced federal tax return information concerning his receipt of unemployment benefits for the years 2020 and 2021. To the extent Plaintiff reported receipt of unemployment benefits to the federal government in the year 2022, he shall produce the federal tax return schedule reporting his unemployment compensation for that year.

Rule 26(g)(1) requires that "[e]very disclosure under Rule 26(a)(1) or (a)(3) and every discovery request, response, or objection must be signed by at least one attorney of record in the attorney's own name—or by the party personally, if unrepresented—and must state the signer's address, e-mail address, and telephone number." Fed. R. Civ. P. 26(g)(1); *see also* Fed. R. Civ. P. 36(a)(3) (requiring that an answer or objection to a request for admission be "signed by the party or its attorney"). The Rules only require that a party himself or herself sign answers to interrogatories. *See* Fed. R. Civ. P. 33(b)(1), (5). Notably, however, if the party objects to the interrogatories and refuses to answer them, only his or her attorney is required to sign. *See id.*

Here, Plaintiff represents he has complied with these Rules [D.E. 25-5 at 1], and the record reflects that Plaintiff's counsel signed Plaintiff's responses to the second set of requests for documents and admissions and Plaintiff's objections to the second set of interrogatories. [*See* D.E. 25-2 at 3, 9, 14]. Accordingly, the application to compel Plaintiff to produce additional certifications lacks merit.

      F.    <u>Other Discovery Matters</u>

Finally, Defendants seek an order compelling Plaintiff to provide a more detailed explanation regarding identified discrepancies in his responses or an updated damage calculation showing his non-working periods and/or part-time periods for the year 2021. [D.E. 25-6 at 4]. In response, Plaintiff appears to state there is no discrepancy and affirms, through counsel's response to Defendants' deficiency letter, that "he did not work after the pandemic from March 2020 for about 3 months" and then "started working about 3 days per week for about 6 months." [D.E. 25-5 at 1]. After reviewing the multiple correspondences between counsel, the Court concludes the parties have not adequately met and conferred to resolve this dispute—despite having previously directed the parties to review Appendix R to the Local Civil Rules, and to

conduct themselves in a reasonable, civil, courteous, and professional manner, especially when meeting and conferring about matters that should be resolved without court intervention. [D.E. 18]. Accordingly, concerning this issue, the parties are directed to immediately resume their meet-and-confer efforts pursuant to Rule 37 and Local Civil Rule 37.1.

### III.   CONCLUSION AND ORDER

**WHEREAS**, for the foregoing reasons and good cause shown,

**IT IS** on this 8th day of March, 2024,

**ORDERED** that Defendants' application for an order compelling Plaintiff to produce tax and bank records is **DENIED**; and it is further

**ORDERED** that Defendants' application for an order compelling Plaintiff to produce additional documents concerning his receipt of unemployment benefits is **DENIED**. To the extent Plaintiff reported receipt of unemployment benefits to the federal government in the year 2022, he shall produce documentation comparable to that already produced for that year. Further, to the extent Defendants intend to serve a subpoena on a governmental agency for documents concerning Plaintiff's receipt of unemployment benefits, they shall serve such subpoena in accordance with Rule 45 on or before **March 15, 2024**; and it is further

**ORDERED** that Defendants' application for an order compelling Plaintiff to respond to their second set of interrogatories is **DENIED**; and it is further

**ORDERED** that Defendants' application to compel Plaintiff to produce additional certifications to his discovery responses is **DENIED**; and it is further

**ORDERED** that the parties shall immediately resume meet-and-confer efforts concerning Defendants' request for a more detailed explanation regarding identified discrepancies in Plaintiff's responses or an updated damage calculation showing his non-working

periods and/or part-time periods for the year 2021. On or before **March 22, 2024**, the parties shall file a joint submission that addresses the dispute including: (i) a short, non-argumentative statement of the item in dispute; (ii) the requesting party's position, relief sought, and basis for such relief (limited to 3 double-spaced pages); and (iii) the objecting party's position (limited to 3 double-spaced pages). Failure to raise any dispute over this request by the March 22, 2024 deadline shall result in a waiver of the underlying request. If the Court remains dissatisfied with the parties' meet-and-confer efforts after reviewing the joint letter, the parties will be required to resume their efforts in this Court's courtroom, on a date to set by further Order, where they will be required to appear at 10:00 a.m., and continue the meet and confer until the earlier of complete resolution or 3:00 p.m., at which time this Court will address the dispute with counsel; and it is further

**ORDERED** that on or before **March 22, 2024**, the parties shall file a joint letter setting forth the current status of discovery and proposing an aggressive schedule for the completion of all remaining discovery. In light of the age of this matter, further extension requests of the discovery deadlines are strongly discouraged, and no further extensions will be granted absent a demonstration of extraordinary circumstances, supported by a certification of counsel filed no less than ten days before the expiration of the deadline; and it is further

**ORDERED** that the Court will hold a telephonic status conference on **March 26, 2024, at 3:00 p.m.**, to be joined by dialing 973-437-5535, access code 982 448 16#.

                                                      /s/ *André M. Espinosa*
                                                      ANDRÉ M. ESPINOSA
                                                      United States Magistrate Judge